**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| K. CRAIG BRANCH, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:10-CV-128-RWS |
| JAYME S. SICKERT, *et al.*, | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

## ORDER

This case comes before the Court on Defendant Jayme B. Sickert's

Motion to Dismiss [14], Defendant John T. Ottinger, Jr.'s Motion to Dismiss

[27], and Defendant George B. Dixon's, as Personal Representative of the

Estate of Cecil Brooks, Motion to Dismiss [36].  After a review of the record,

the Court enters the following Order.

**I. Brief Factual Summary**[1]

The case arises out of securities transactions between the Plaintiffs and

the Defendants' organizations.  Plaintiffs K. Craig Branch, Mary W. Branch,

---

[1]The facts are drawn from Plaintiff's Complaint and any Exhibits. The Court does
not make any findings of fact.

and H. Brian Haney all purchased securities in Cornerstone Ministries Investments, Inc. ("Cornerstone") and Wellstone Retirement Communities I, LLC ("WRC"). Cmpl., Dkt. No. [1] at ¶¶ 26, 31. Additionally, Plaintiffs Craig and Mary Branch purchased the same type of securities on behalf of their children, Plaintiffs Catherine Branch Chestnut, Ladye Kimberly Branch, and Cristopher Craig Branch. Id. at ¶ 28. Cornerstone and WRC were "created and controlled" by the Defendants along with Wellstone Securities, Inc. ("Wellstone Securities"). Id. at ¶ 22.

Cecil A. Brooks, who is represented in this suit by his estate's administrator–George Dixon, was the Chairman and Chief Executive Officer of Cornerstone and Defendant John T. Ottinger, Jr. was the Chief Financial Officer.  Additionally, Defendant Jayme Sickert actually sold the Plaintiffs securities through the Wellstone Securties arm of Defendants' organization. Id. at ¶¶ 26, 29.

Eventually in 2008, approximately eleven years after the Branches' initial investment, Cornerstone filed for bankruptcy. Id. at ¶¶ 26, 72. This bankruptcy was due to the "for-profit, high-risk business deals" which the companies were making, contrary to the Defendants' assertion that the investments would be

2

"safe and stable." Id. at ¶¶ 26, 74.  Plaintiffs, upon learning of this information, filed this suit, alleging: (1) Georgia and Alabama securities law violations; (2) common law fraud; (3) breach of fiduciary duty; (4) promissory fraud; (5) breach of fiduciary duty; and, (5) violations of 1934 Act and Rule 10b-5.

Defendant Dixon has now moved to dismiss for lack of jurisdiction and Defendant Sickert has joined him to dismiss for improper venue.  Additionally, Defendant Ottinger has moved to dismiss for failure to state a claim.  The Court will consider each motion in turn.

## II. Discussion

### A. Defendant Dixon's Jurisidiction

Defendant Dixon first moves to dismiss for lack of personal jurisdiction. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Under the Georgia Long Arm Statute, Georgia courts may exercise personal jurisdiction over a non-resident who transacts business within the State of Georgia. O.C.G.A. § 9-10-91(1). Jurisdiction exists under the "transacting business" prong of the long-arm

statute if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) the cause of action arises from or is connected with such act or transaction, and (3) the exercise of jurisdiction . . . does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006). The Eleventh Circuit has stated that the first prong of the three-part inquiry satisfies the "transacting business" requirement of the long arm statute and the second and third prongs satisfy federal due process–the "transacting business" inquiry is no longer collapsed into the federal due process inquiry. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1260 n.11 (11th Cir. 2010).

While Plaintiffs alleged that George Brooks was a Georgia resident at the time of his death, following a hearing on the matter, it was confirmed that George Brooks became a resident of Florida on August 26,2008, approximately ten months before his death.  As such, while Defendant Brooks was a resident of Georgia when the causes of action arose, he will be considered a "nonresident" for purposes of the long arm statute under O.C.G.A. § 9-10-90. See O.C.G.A. § 9-10-90 (stating that a "nonresident" also includes one who resides in Georgia at the time of the cause of action but later becomes domiciled

4

in another state prior to service of process).   As Brooks would be deemed a

non-resident for purposes of the long arm statute, Georgia's long arm statute

would also reach Defendant Dixon as Brooks' administrator. See O.C.G.A. § 9-

10-91 (stating that the long arm statute extends personal jurisdiction "over any

nonresident or his or her executor or administrator").  Therefore, personal

jurisdiction will be proper if Brooks' conduct satisfies the long arm.

Here, there is no dispute that Brooks transacted business within the state.

In fact, Cornerstone and Wellstone Securities operated out of Cumming,

Georgia, and  Brooks worked in Georgia when all of these events took place.

See Cmpl., Dkt. No. [1] at ¶¶ 14, 22. These causes of actions arise out of

Brooks' purposeful acts and traditional notions of fair play and substantial

justice are not offended by extending jurisdiction over Brooks' estate.

Therefore, personal jurisdiction is proper over Defendant Dixon as the

administrator of Brooks' estate.

However, Dixon also alleges that Plaintiffs' claims are untimely under

Section 733.702 of the Florida probate code.  This provision bars any claim

which arose prior to the decedent's death if that claim was not presented within

three months of the creditor publication notice.  FLA. STAT. § 733.702.

5

Ultimately, this statute works as a statute of nonclaim, or is an "automatic bar to untimely claims." Thames v. Jackson, 598 So. 2d 121, 123 (Fla. Ct. App. 1992). Here, it is undisputed that notice was not provided to Brooks' estate within the Florida three-month filing period.  However, this provision is in direct conflict with both the Georgia and federal statutes of limitations for Plaintiffs' tort claims.

A federal court sitting in diversity applies the "conflict of laws rules of the courts of the states in which they sit." Griffin v. McCoach, 313 U.S. 498, 503 (1941).  Georgia uses the traditional rule of *lex loci delicti*, which provides that "a tort action is governed by the substantive law of the state where the tort was committed." Dowis v. Mudslingers, Inc., 621 S.E.2d 413, 414, 419 (Ga. 2005). Further, Georgia law generally regards foreign statutes of limitations as procedural and will apply its own statute of limitations. Hudnall v. Kelly, 388 F. Supp. 1352, 1354 (N.D. Ga. 1975); see, e.g. O.C.G.A. § 10-5-58(j) (stating that an action for the as-alleged securities fraud must be filed within two years of discovery of the facts which support the claim or within five years of the violation, whichever is earlier).

The Court finds <u>Peterson v. Wade</u>, 152 S.E.2d 745 (Ga. 1966) instructive in this case.  There, a car accident occurred in Georgia. <u>Id.</u> at 746.  The drivers of one vehicle, the defendants, died as a result of the accident and their estate was probated in Massachusetts. <u>Id.</u>  Under Massachusetts probate law, the plaintiffs were required to file a notice of claim in the Massachusetts Probate Court registry within one year after the defendants' administrator gave bond. <u>Id.</u> at 747.  Failure to do so barred any claim against the estate under Massachusetts law. <u>Id.</u> at 749.  However, the plaintiffs did not file such claim, and the Defendants raised this defense in the Georgia court.

The Georgia court ruled that the plaintiffs' failure to file did not bar their Georgia tort claims–the Georgia statute of limitations would control. <u>Id.</u> Further, the court stated that "in an action brought by creditors of a testator in the state of Georgia against his executors, the statute of limitations of Georgia will be applied, rather than the statute of limitations of the state of the testator's domicile." <u>Id.</u>

Here, Plaintiffs did not file their claim with Brooks' estate within three months of the publication notice.  However, under Georgia law, that failure is irrelevant.  Georgia treats statutes of limitations, and by extension, statutes of

nonclaim as procedural.  Thus, Georgia law will control and Florida's probate

statute is of no consequence here. Further, the federal statute of limitations will

control on the federal securities fraud claims.  <u>See</u> 28 U.S.C. § 1658(b)(1)

(stating that a §10(b) action must be brought within "2 years after the discovery

of the facts constituting the violation; or 5 years after such violation,"

whichever is earlier).  As such, Florida's probate statute is not a bar to

Plaintiffs' claims against Defendant Dixon.

  <u>B. Arbitration</u>

  Defendants Dixon and Sickert have additionally moved to dismiss for

improper venue, citing an arbitration clause.  The Federal Arbitration Act is "a

congressional declaration of a liberal federal policy favoring arbitration

agreements, notwithstanding any state substantive or procedural policies to the

contrary." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1,

24 (1983). The FAA has instituted a policy "favoring arbitration  agreements"

and its main goal is "moving the parties to an arbitrable dispute out of court and

into arbitration  as quickly as possible." <u>Green Tree Fin. Corp-Alabama v.</u>

<u>Randolph</u>, 531 U.S. 79, 85 (2000) (<u>citing</u>  <u>Moses,</u>  460 U.S. at 22). Further, the

FAA establishes that "as a matter of federal law, any doubts concerning the

AO 72A
(Rev.8/82)

scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses, 460 U.S. at 24-25.

In setting up various purchases, the Plaintiffs each signed a "New Account Form" which included an arbitration agreement.  Forms, Dkt. No. [14-1].  The clause stated, in relevant part, that

> [a]ny controversy arising out of or relating to my/our accounts, to transactions with or for me/us, or to this agreement, or breach thereof, shall be settled by arbitration pursuant of the law of the State of Georgia, to be held at a location in Georgia, in accordance with the rules of the Board of Governors of the National Association of Securities Dealers then in effect . . .All parties to this agreement are giving up the right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which the claim is filed.

Id.

Since signing this clause, however, the National Association of Securities Dealers ("NASD") has been renamed the Financial Industry Regulation Authority ("FINRA"). SEC Release, Dkt. No. [25-1] at 9.  Additionally, FINRA

has enacted Rule 12202,[2] which prevents FINRA from arbitrating claims with members whose memberships have been terminated, suspended, cancelled or revoked, or with a member that is otherwise defunct, unless the customer agrees in writing after the claim has arisen. Rule 12202, Dkt. No. [17-1] at 2.

Plaintiffs argue that Rule 12202 prevents arbitrability because it is undisputed that Wellstone Securities is now defunct,  Defendant Sickert is no longer registered with a FINRA firm, and they have not agreed to arbitrate post-dispute. See Dkt. No. [17-2] at 2. Further, Plaintiffs allege that the selection of the FINRA Rules was a selection of FINRA as the forum, which was integral to the clause. Thus, the Plaintiffs argue that the arbitration clause is not binding since FINRA will not arbitrate issues between these parties.

First, there is a preliminary question of whether FINRA would even refuse to arbitrate in this case.  While the Plaintiffs are correct that Defendant Sickert is not registered with a FINRA firm, it is appears that he still qualifies as

---

[2]While the briefing between the parties regarded Rule 12202, the Plaintiffs raised Rule 10301(a) at the hearing.  However, Rule 10301(a) was superceded by the 12000 Series  for any claims filed on or after April 16, 2007. FINRA, http://finra.complinet.com/en/display/display_viewall.html?rbid=2403&element_id=4057&record_id=5135 (last visited Feb. 24, 2011). However, this is of no consequence to the Court's reasoning as Rule 12202 parrots Rule 10301(a) in its operative provisions.

a "member" under the FINRA Rules.  FINRA Rule 12100(o) defines a

"member" as

> any broker or dealer admitted to membership in FINRA, whether
> or not the membership has been terminated or cancelled; and any
> broker or dealer admitted to membership in a self-regulatory
> organization that, with FINRA consent, has required its members
> to arbitrate pursuant to the Code and/or to be treated as members of
> FINRA for purposes of the Code, whether or not the membership
> has been terminated or cancelled.

FINRA Rules,

http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_i

d=4099 (last visited Feb. 24, 2011). Here, according to the Broker Report

Summary provided by the Plaintiffs, Sickert is a member of FINRA.  His

membership, according to the above definition, is not dependent upon his

registration with a FINRA firm.  Further, there is no evidence that Sickert's

membership has been expelled, terminated, suspended, cancelled, or revoked.

Therefore, the Court is of the opinion that FINRA would be able to arbitrate

these claims.

However, even if FINRA would refuse to arbitrate, the clause is still

enforceable.  First, there is a question whether this clause even chooses FINRA

as the forum because the clause selects the FINRA Rules, not the organization

11

itself.  However, the Eleventh Circuit has been willing to infer that when the

parties select an organization's rules, they implicitly select the forum.  <u>See</u>

<u>Luckie v. Smith Barney, Harris Upham & Co.</u>, 999 F.2d 509, 510-11, 513-514

(11th Cir. 1993) (finding that parties to security transactions could be

compelled to arbitrate before specifically listed organizations whose rules alone

were incorporated in the clause).  But, even assuming the parties did select

FINRA as the forum, the Court does not find that selection was integral to the

clause.

In <u>Brown v. ITT Consumer Financial Corp.</u>, 211 F.3d 1217 (11th Cir.

2000), the Eleventh Circuit dealt with a similar issue.  There, the parties agreed

that "any dispute between them or claim by either against the other or any agent

or affiliate of the other shall be resolved by binding arbitration under the Code

of the Procedure of the National Arbitration Forum" ("NAF").  <u>Id</u> at 1220.  The

NAF dissolved before the litigation and the Plaintiffs argued that since the

forum choice was unavailable, the arbitration clause was voided.  <u>Id.</u> at 122. The

Court rejected that argument.  <u>Id.</u>

First, the court found that while choosing the Code did select the NAF as

the forum, the unavailability of that forum did not void the clause.  <u>Id.</u>  Rather,

in such a situation, the court should apply §5 of the FAA and appoint a substitute arbitrator.   The only bar to that appointment power would be if the forum selection clause was "an integral part of the agreement to arbitrate, rather than an 'ancillary legal concern.'" <u>Id.</u>  Finding no evidence that the selection clause was integral, the Eleventh Circuit found that the clause was not voided by the unavailability of the NAF.

Additionally, the Ninth Circuit, in relying on the Eleventh Circuit in <u>Brown</u>, has reached the same decision.  <u>Reddam v. KPMG, LLP</u>, 457 F.3d 1054, 1060 (9th Cir. 2006).   In <u>Reddam</u>, the parties selected the rules of the NASD and proceeded to arbitration, but once the plaintiff removed the sole NASD member from its complaint, the NASD refused to arbitrate the claims between the remaining parties. <u>Reddam</u>, 457 F.3d at 1057. The parties then proceeded to court where the district court determined that because the NASD had refused to arbitrate the claim, arbitration was no longer available. <u>Id.</u>

The Ninth Circuit rejected the district court's decision. <u>Id.</u> at 1060. Citing <u>Brown</u>, the Court ruled that there was no evidence that the NASD selection was anything more than an "ancillary logistical concern." <u>Id.</u>  The Court relied on the fact that there was no express statement that the NASD would serve as the

13

arbitrator and stated that "[s]omething more direct than [the NASD "bowing out"] is required before we, in effect, annihilate an arbitration agreement." Id. at 1061.

With this background, the Court finds that the selection of the NASD, now FINRA, was not anything more than an "ancillary logistical concern." Plaintiffs point to subsection (a) of their clause which states, "[a]ll parties to this agreement are giving up the right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which the claim is filed." Clause, Dkt. No. [14-1] at 2 (emphasis added). Based upon this provision, they state that because the FINRA Rules allegedly would reject these claims, the selection of FINRA was integral. However, the provision states the "arbitration forum" instead of the "NASD" or "FINRA." See Reddum, 457 F.3d at 1060 (finding that the parties' failure to expressly state that the NASD would be the arbitral forum required finding that the selection was not integral). Thus, it appears by reading the entire clause, that the parties intended that the forum could be separate and distinct from the then-recognized NASD, as the NASD was not specifically or exclusively chosen as the forum.

14

Secondly, the Plaintiffs have challenged whether their claims fall within the scope of the arbitration clause. Namely, they argue that the Defendants have only produced copies of arbitration agreements which were signed as early as 2004 by the Branches and 2006 by Haney.  However, the Branches began trading with Wellstone Securities in 1999, and Haney in 2000.

Defendants respond that all securities transactions, including the ones in 1999 and 2000, were consummated on identical forms, but because Wellstone is now defunct, the Defendants are having difficulty locating the other copies. Def.'s Reply, Dkt. No. [22] at 4-5, n.1.  And, it is Plaintiffs' burden to prove that venue is proper. Anthem Leather, Inc. v. Kamino Int'l Transport, Inc., 2008 WL 516289, *2 (N.D. Ga. Feb. 25, 2008).

Additionally, the clause broadly states "arising out of or relating to;" thus, the previous purchases which relate to the 2004 and 2006 purchases would fall under the scope of the clause as well.  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses, 460 U.S. at 24-25. Thus, the Court finds that the arbitration clause includes Plaintiffs' claims against Defendants Sickert and Dixon.

15

Lastly, the Plaintiffs have challenged whether Defendants Sickert and Dixon can even enforce the clause because Plaintiffs signed the arbitration agreement with Wellstone Securities–not the Defendants.  However, it should first be noted that Plaintiffs do not cite any authority which supports that position.  Namely, their argument is that because the Defendants were "insiders," the Plaintiffs could not have agreed to arbitrate these claims because they did not know those facts at the time of signing.  However, such "controlling person" liability claims would clearly arise out of or be related to their securities purchases, which Plaintiffs allege underlie their claims. See McBro Planning and Dev. Co. v. Triangle Elec. Const. Co., 741 F.2d 342, 344 (11th Cir. 1984) ("[i]t is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract."); Cmpl., Dkt. No. [1] at ¶ 81 ("As alleged herein, Defendants, in connection with the offer, sale, and issuance of securities to Plaintiffs..."); 15 U.S.C. § 78(t) (stating that a "controlling person" within an organization is jointly and severally liable with any person they controlled for the controlled person's underlying securities violations). Therefore, the clause

AO 72A
(Rev.8/82)

contemplates securities violations predicated on "controlling person" liability, based upon the broad wording of the clause.

The fact that Wellstone Securities was the named party to the clause will not defeat Defendants Sickert and Dixon's clause invocation.  First, Defendant Sickert was an express signatory to all of the agreements. And, Brooks' non-signatory status will not defeat his motion due to equitable estoppel. While generally an express agreement to waive a right to trial is required, the Eleventh Circuit has recognized two limited equitable estoppel exceptions. <u>MS Dealer Serv. Corp. v. Franklin</u>, 177 F.3d 942, 947 (11th Cir. 1999).

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause "must rely on the terms of the written agreement in asserting [its] claims" against the nonsignatory. When each of a signatory's claims against a nonsignatory "makes reference to" or "presumes the existence of" the written agreement, the signatory's claims "arise[ ] out of and relate[ ] directly to the [written] agreement," and arbitration is appropriate. Second, "application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Otherwise, "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."

<u>Id.</u> (internal citations omitted).

17

Here, the second situation is present.  Plaintiffs' complaint rarely separates the Defendants for purposes of alleging their improper conduct and allege joint and several "controlling liability" against all Defendants. Cmpl., Dkt. No. [1] at ¶ 102-03.  Moreover, Plaintiffs–contrary to their assertions at the hearing–expressly state that "the Defendants created and <u>controlled</u> . . . .Wellstone Securities, Inc." <u>Id.</u> at ¶ 22. Therefore, Plaintiffs should be estopped from preventing arbitration against Defendants Dixon or Sickert.

Based on the foregoing, Defendants Dixon and Sickert's Motions to Dismiss for Improper Venue [14, 36] are **GRANTED** and the parties are **DIRECTED** to proceed to FINRA to arbitrate their claims.  If FINRA deems itself unavailable, then the parties should proceed to an alternative forum.

<u>C. Ottinger's Motion to Dismiss</u>

<u>1. Legal Standard</u>

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint."  <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff.  <u>Bryant v. Avado Brands, Inc.</u>, 187

18

F.3d 1271, 1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555-56 (2007) (internal citations omitted).  However, "[a] pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

a cause of action will not do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937,

1949 (2009) (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" Id.

        The United States Supreme Court has dispensed with the rule that a

complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond

doubt that the plaintiff can prove  no set of facts in support of his claim which

would entitle him to relief.'"  Twombly, 127 U.S. at 561(quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule

with the "plausibility standard," which requires that factual allegations "raise

the right to relief above the speculative level."  Id. at 556.  The plausibility

standard "does not[, however,] impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence [supporting the claim]." Id.

2. Discussion

Defendant Ottinger has moved to dismiss Plaintiffs' claims, citing their failure to plead fraud with particularity, their lack of standing for the fiduciary duty claim, and that the entire complaint is a "shotgun" pleading.  Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "serves an important purpose in fraud  actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral or fraudulent behavior." <u>Brooks v. Blue Cross and Blue Shield</u>, 116 F.3d 1364, 1370-71(11th Cir. 1997) (citations omitted). Rule 9(b) may be satisfied if the complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) the time and place of each such statement and the person responsible for making . . . same, and
>
> (3) the content of such statement and the manner in which they misled the plaintiff, and
>
> (4) what the defendants "obtained as a consequence of the fraud."

Id. at 1371.

20

Defendant Ottinger's objection is well taken. Plaintiff does not allege precisely what actionable statements were made, whether all such statements were made in writing or orally, the time and place of the relevant statements, or the person(s) responsible for making all of such statements. The Court will not dismiss Plaintiffs' fraud claim, but rather provide Plaintiffs an opportunity to amend their Complaint to attempt to allege their fraud claim with the level of specificity required by Rule 9(b). Additionally, there is some concern regarding the statutes of limitations, especially in regard to the securities claims. Plaintiffs should clearly indicate when the various purchases were made which underlie their claims. As well, Plaintiffs should make clear whether they have filed a demand to predicate a fiduciary duty claim.

Based on the foregoing, Defendant Ottinger's Motion to Dismiss is **DENIED, with right to refile**. Plaintiffs are **ORDERED** to file an amended complaint within 21 days of this Order.

III. Conclusion

Defendants Dixon and Sickert's Motions to Dismiss for Improper Venue [14, 36] are **GRANTED** and those parties are **DIRECTED** to proceed to FINRA to arbitrate their claims.  If FINRA deems itself unavailable, then the

parties should proceed to an alternative forum. Additionally, Defendant

Ottinger's Motion to Dismiss [27] is **DENIED, with the right to refile**.

Plaintiffs are **ORDERED** to file an amended complaint within 21 days of this

Order.

     **SO ORDERED** this  _28th_  day of February, 2011.


                                 **RICHARD W. STORY**
                                  United States District Judge

AO 72A
(Rev.8/82)