**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| K. CRAIG BRANCH, *et. al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 2:10-CV-128-RWS |
| JOHN T. OTTINGER, JR., | : | |
| | : | |
| Defendant. | : | |

## **ORDER**

This case comes before the Court on Plaintiffs' Motion to Compel Defendant Ottinger into Arbitration or, in the alternative, to Stay the Proceeding [56] and Defendant Ottinger's Motion to File Surreply [61]. After a review of the record, the Court enters the following Order.

## **Background**[1]

This case arises out of securities transactions between the Plaintiffs and

---

[1] The facts are drawn from the Plaintiffs' Complaint and any Exhibits. The Court does not make any findings of fact.

the original Defendants'[2] organizations. Plaintiffs K. Craig Branch, Mary W. Branch, and H. Brian Haney all purchased securities in Cornerstone Ministries Investments, Inc. ("Cornerstone") and Wellstone Retirement Communities I, LLC. Cmpl., Dkt. No. [1] at ¶¶ 26, 31. Additionally, Plaintiffs Craig and Mary Branch purchased the same type of securities on behalf of their children, Plaintiffs Catherine Branch Chestnut, Ladye Kimberly Branch, and Christopher Craig Branch. Id. at ¶ 28. Cornerstone and WRC were "created and controlled" by the original Defendants along with Wellstone Securities, Inc. Id. at ¶ 22.

Cecil A. Brooks, who was represented in this suit by his estate's administrator–George Dixon, was the Chairman and Chief Executive Officer of Cornerstone and Defendant John T. Ottinger, Jr. was the Chief Financial Officer. Additionally, former Defendant Jayme Sickert actually sold the Plaintiffs securities through the Wellstone Securities arm of the original Defendants' organization. Id. at ¶¶ 26, 29.

Eventually in 2008, approximately eleven years after the Branches' initial investment, Cornerstone filed for bankruptcy. Id. at ¶¶ 26, 72. This bankruptcy was due to the "for-profit, high-risk business deals" which the companies were

---

[2] Plaintiffs originally sued Jayme B. Sickert, John T. Ottinger, Jr., Jack R. Wehmiller, and George B. Dixon - as administrator of the estate of Cecil Brooks.

2

making, contrary to the original Defendants' assertion that the investments would be "safe and stable." Id. at ¶¶ 26, 74. Plaintiffs, upon learning of this information, filed this suit, alleging: (1) Georgia and Alabama securities law violations; (2) common law fraud; (3) breach of fiduciary duty; (4) promissory fraud; (5) breach of fiduciary duty; and, (5) violations of the 1934 Act and Rule 10b-5.

Plaintiffs voluntarily dismissed all claims against Defendant Jack Wehmiller. Soon after, Defendants Sickert and Dixon successfully moved to dismiss for improper venue, citing an arbitration clause. The Court found that the Plaintiffs and Sickert were signatories to the arbitration agreement, and that Dixon was able to enforce the arbitration agreement against the Plaintiffs through equitable estoppel. Therefore, Ottinger is the only remaining Defendant before the Court. Plaintiffs have now moved to compel Ottinger, a non-signatory to the arbitration clause, into arbitration.

## Discussion

I. Preliminary Matters

In their reply brief, Plaintiffs challenge the timeliness of Defendant Ottinger's response to Plaintiffs' motion. In response, Ottinger has filed a motion for surreply on that ground. Although neither the Federal Rules of Civil

3

Procedure nor this Court's Local Rules authorize the filing of surreplies, the Court may, in its discretion, permit the filing of a surreply when a valid reason exists, "such as where movant makes new arguments in its reply brief." Frederick v. Mercedes Benz USA, LLC, 386 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). Because Plaintiffs raised a new issue in their reply, Defendant Ottinger's motion to file surreply is **GRANTED**.

As Ottinger notes in his surreply, in addition to the 14 days allowed by Local Rule 7.1B to file a response to Plaintiffs' motion, service of documents filed through the case management/electronic case filing system is the "equivalent of service of the pleading or other paper by first class mail, postage prepaid"and afforded the additional three days allowed under Federal Rule of Civil Procedure 6(d). LR, NDGa at Appendix H, II(B)(1)(a). Therefore, Ottinger had 17 days to file his response to Plaintiffs' motion. Plaintiffs filed their motion [56] on March 14, 2011 and Ottinger filed his response [59] on March 30, 2011 - within the 17days allowed. Ottinger's response is thus timely.

II. Compelling Arbitration

Plaintiffs claim that, although Ottinger is not a signatory to the arbitration agreement, he should be compelled to arbitrate. The Federal Arbitration Act is "a congressional declaration of a liberal federal policy favoring arbitration

4

agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). However, "arbitration is a matter of contract [and] the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995)). As Ottinger is not a signatory to the arbitration agreement, Plaintiffs present two possible routes to compel arbitration.

First, Plaintiffs allege that the issues involving Ottinger and the other two Defendants already in arbitration, Sickert and Dixon, are "virtually indistinguishable," and the Court should compel Ottinger to join them. Dkt. No. [56] at 8. However, Plaintiffs cite no authority for the proposition that indistinguishable claims compel a non-signatory into arbitration. Further, Plaintiffs present no evidence that any arbitration decision regarding the other two Defendants would be preclusive against Ottinger, especially considering the claims against Ottinger are grounded in individual liability. Because Plaintiffs have not alleged a conspiracy or similar vehicle, all claims arise out of Ottinger's individual actions and would need to be heard and resolved independently of the other two Defendants, whether in arbitration or otherwise.

5

Second, in their reply, Plaintiffs present a list of equitable, state-law principles which they allege should be used to compel Ottinger into arbitration as a non-signatory, those being "assumption, piercing the corporate veil, alter ego, incorporation by reference, and third-party beneficiary."[3] Dkt. No. [60] at 3 (citing Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1902 (2009)). However, summarily listing these grounds is the extent of Plaintiffs' argument. Plaintiffs make no explanation and present no facts to substantiate how any of these grounds apply here. Although Plaintiffs are correct that the Court in Arthur Anderson recognized that traditional principles of state law will allow a contract, and through § 3 of the FAA, an arbitration agreement to be enforced against a non-party in certain circumstances, (Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1902 (2009)) Plaintiffs failure to explain why those state-law principles apply here prevent the Court from applying them.

For the foregoing reasons, Plaintiffs' Motion to Compel Arbitration is **DENIED.**

III. Motion to Stay the Proceeding

Plaintiffs request, if the Court does not compel Ottinger to arbitration,

---

[3] As Plaintiffs explicitly deny invoking equitable estoppel as a grounds to compel Ottinger into arbitration, the Court does not address this argument. Dkt. No. [60] at 2.

that the Court stay these proceedings until Dixon and Sickert's arbitration is completed. Dkt. No. [56] at 11. The Court recognizes that, under § 3 of the FAA, it must stay a proceeding "upon being satisfied that the issue[s] involved in such suit or proceeding [are] referable to arbitration" under a valid arbitration agreement. Klay v. All Defendants, 389 F.3d 1191, 1203-04 (11th Cir. 2004) (quoting 9 U.S.C. § 3). However, the Court is not satisfied that the issues against Ottinger are referable to arbitration for the reasons discussed previously. "When confronted with litigants advancing both arbitral and nonarbitrable claims, ... courts have discretion to stay nonarbitrable claims. In this instance, courts generally refuse to stay proceedings of nonarbitral claims when it is feasible to proceed with the litigation. Crucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." Id. at 1204. (citations omitted).

In the present case, because the claims are based on individual liability and there is no overlap of Defendants between forums, refusing to grant a stay would not result in duplicative proceedings. For the same reasons, a decision in either proceeding would not have a preclusive effect in the other. All claims

7

against each Defendant must be decided individually, whether that is through arbitration or litigation.[4]

Plaintiffs additionally argue that Ottinger will present great opposition to the discovery process which would be alleviated if all discovery was conducted in arbitration with the other Defendants. While these concerns do not warrant a stay of litigation, this Order does not preclude coordination between litigation and arbitration discovery. Indeed, the Court encourages such coordination, especially considering the Plaintiffs' commonality in both proceedings.

For the foregoing reasons, Plaintiffs' Motion to Stay is **DENIED.** Plaintiffs are **ORDERED** to file an amended complaint to cure the deficiencies the Court noted in denying Defendant Ottinger's Motion to Dismiss [53] within 21 days of this Order.

## CONCLUSION

Based on the foregoing, Defendant Ottinger's Motion to File Surreply [61] is **GRANTED**, Plaintiffs' Motion to Compel Arbitration [56] is **DENIED,** Plaintiffs' Motion to Stay [56] is **DENIED**, and Plaintiffs are **ORDERED** to

---

[4] Moreover, the Court questions, when all arbitrable issues have been dismissed from an action, whether those former, non-preclusive claims should even be considered in a predomination inquiry since they are no longer before the Court.

8

file an amended complaint to cure the deficiencies the Court noted in denying

Defendant Ottinger's Motion to Dismiss [53] within 21 days of this Order.

**SO ORDERED**, this  26th  day of September, 2011.

_____
**RICHARD W. STORY**
United States District Judge